WILLIS S. HUBBARD, ADMINISTRATOR,

v.

GUY STAPP, RECEIVER, ETC.

*Life Insurance—Assignment of Policy—Specific Performance—Vested Interest—Embezzled Funds—Lien.*

1.  A person named as the beneficiary in a life insurance policy obtains a vested interest therein, which can not be affected by any subsequent act of the assured.

2.  A life insurance policy can not be assigned without the consent of the company.

3.  Where the assured has paid the premiums on a policy in favor of a third person with funds embezzled from another, such payments are a lien on the policy; and if the one from whom such funds have been embezzled pays subsequent premiums, the same, with interest, also constitute a lien on the policy.

4.  The decree can not find more than is charged in the bill.

5.  In the absence of a bill of exceptions and certificate of evidence, the only question is whether the findings of the court below are sufficient to sustain the decree.

[Opinion filed June 4, 1889.]

In error to the Circuit Court of Warren County; the Hon. John J. Glenn, Judge, presiding.

What we presume may be regarded as the material allegations of the bill in this case are, that on the 9th day of April, 1884, B. T. O. Hubbard was the owner and in the possession of five several policies of insurance: three in a New England company, numbered 62,034, 65,584, 66,426, and dated respectively, July 21, 1879, July 30, 1881, and December 31, 1881; one in a New York and one in a New Jersey company. That number 65,584 was made payable to Hubbard at the end of fifteen years, or in the case of his death before that date, then to his executors and administrators for the use and benefit of his wife, Fannie P., and of his son, Willis S. Hubbard, if they should survive him; that number 66,426 was made payable to him at the end of twenty years, or in case of his death before that date, then to his executors or administrators for the benefit of his said wife and son, if they should survive him; that Hubbard was, on said 9th day of April, found to be largely indebted to the bank for money embezzled; that to reimburse the bank in part for the money taken, he agreed to assign the several policies of insurance to the bank, and in pursuance of such agreement left the policies in possession of the bank; that he afterward refused to assign according to his agreement, but made a pretended transfer of the same to defendants Fannie P. and Willis S. Hubbard; and charges that a large amount of the premiums paid by B. T. O. Hubbard on the policies were paid in the money and funds of the bank embezzled by him; that none of the premiums were paid by Fannie P. or Willis S. Hubbard, but were paid by said B. T. O. Hubbard, either out of his own funds or out of the funds of the bank, and the bill prays the specific performance of the agreement.

The bill was filed April 24, 1885, and at the appearance term a demurrer by all the defendants was filed to the bill, which was afterwards overruled (see record, pages seven and eight); and defendants thereupon answered, thereby, as is claimed, waiving all technical objections to the bill and admitting its substantial equities.

The answer of the defendants, Fannie P. and Willis S. Hubbard, was joint, and denies most of the material allegations of the bill.    Admits that B. T. O. Hubbard was, at the time alleged, the owner of policy number 62,034 and of the New Jersey policy, but denies that he was the owner of policies number 65,584 and 66,426 and the New York policy, and avers that they were the owners of these policies, and, avers also, that B. T. O. Hubbard had no right or authority to sell, assign or transfer any of the last named policies " without the consent of these defendants."

A replication was filed to the answer, upon which there was a hearing and decree in favor of the complainants below for the three first named policies, numbered 62,034, 65,584, and 66,426.    The other two policies, as stated by counsel for plaintiffs in error, were delivered up and are not in dispute. Nor do we understand that any claim is made on account of the first named policy, numbered 62,034, the answer having conceded that that policy was the property of B. T. O. Hubbard when the contract of assignment was made, and the argument of plaintiffs making no claim thereto.    The controversy, then, only relates to the remaining two policies numbered 65,584, dated July 30, 1881, and 66,426, dated December 31, 1881.    The contention is that these policies having been made payable to the use and benefit of his wife and son, if he should die within the times limited in the policies and they should survive him, they had a vested interest in the policies such as would prevent their transfer without their consent.

There is no bill of exceptions nor certificate of evidence.

The only question, then, properly arising here is, are the findings of the court below, as stated in the decree, sufficient to sustain the decree?

The decree finds every material fact as stated in the bill. That Hubbard was, on the 9th day of April, 1884, indebted to the bank as set forth in the bill, and was at that time the owner and possessed of the insurance policies described; that in consideration of his indebtedness he agreed to assign them to the bank for its own use and benefit; that in pursuance of such

agreement the policies were delivered to the bank, in whose possession and in that of its receiver they remained from that time; that none of the premiums were paid by plaintiffs in error, but were all paid by B. T. O. Hubbard out of the funds of the bank embezzled by B. T. O. Hubbard, and that the pretended assignment of the policies to plaintiffs in error was with notice of and in fraud of the rights of the bank, and that complainant below was duly appointed receiver of the bank.

Upon these findings the decree was based.

Messrs. PORTER & MACDILL, for plaintiffs in error.

Messrs. KIRKPATRICK & ALEXANDER and R. J. GRIER, for defendant in error.

LACEY, P. J. Various questions are raised in this case by appellant, who cites, in support of his claim that the interest of the wife and son of B. T. O. Hubbard could not be transferred to the bank in the manner claimed, the following cases: The Central Bank of Washington City, etc., v. Hume, U. S. Supreme Court, by Chief Justice Fuller, filed November 1, 1888 (128 U. S.). Also, Glanz v. Gloeckler, 104 Ill. 573; S. C., 10 Ill. App. 484. Other cases may be found bearing on the same point, as Johnson v. Van Epps, 110 Ill. 551; S. C., 14 Ill. App. 201.

The case above cited from the United States Supreme Court, and also of Glanz v. Gloeckler, both hold that where an insurance policy is taken by the assured on his own life, payable at his death to a third party, such party attains a vested interest in the policy.

And in Gould v. Emmerson, 99 Mass. 154, it will be seen that it makes no difference whether the policy is made directly payable to the beneficiary or not.

In Bliss on Life Ins., 2d Ed., p. 517, it is laid down as a rule as follows: "We apprehend the general rule to be that a policy, and the money to become due under it, belongs, the moment it is issued, to the person or persons named in it as

Hubbard v. Stapp.

the beneficiaries; and that there is no power in the person procuring the insurance, by any act of his, by deed or will, to transfer to any other person the interest of the person named.    An irrevocable trust is created."

It may be contended that the authority of the above was misleading in making such statement by the examination of cases from such States where the statutes regulated the matter, and that the rule is not applicable to States where there is no statute law on the subject.    In view of the decisions in Otis v. Beckwith, 49 Ill. 121, and Glanz v. Gloeckler, 104 Ill. 573, we can not believe that such claim can be set up in this State, either where the policy is made payable directly to the benefi-ciary or to the assured's administrator for his use.    We can see but little distinction, and believe the author has stated the law correctly.    We will notice the question further on.

The policies in question were made payable to himself at the end of fifteen years and twenty years, respectively; in case of his death before those dates, to his executors and adminis-trators, for the use and benefit of his wife, Fannie P. Hubbard, and his son, Willis S. Hubbard, if they should survive him.

This was equivalent to a policy for the benefit of his wife and son, running fifteen and twenty years, respectively, in case of death within that time, and this limitation or contin-gency, as we conceive, can make no difference in the right to insure for the benefit of his wife and son.    The policy was never changed by the insurance company to an absolute policy payable to Hubbard's administrators, but Hubbard agreed to transfer the policy absolutely for the benefit of the bank; and in that way the bank took it and got the agreement for the assignment.    This could not be done except by the con-sent of the insurance company, if at all.    The original con-tracts of insurance have never been changed.    Johnson v. Van Epps, 14 Ill. App. 201.    In Glanz v. Gloeckler, 104 Ill. 573, where the insurance in case of death was payable to the wife, it was held an interest vested in her that could not be changed except by her consent.

In Otis v. Beckwith, 49 Ill. 121, where the insured never parted with the possession of the policy of insurance, but on a

separate paper assigned it for the benefit of his three sons to a trustee, and the same was accepted by such trustee, it was held to be an irrevocable trust in favor of his sons. And it does not matter whether the *cestui que trust* occupies the position of volunteer or not. Badgley v. Votrain, 68 Ill. 25.

It is insisted that the bill charges and decree finds that the insured, Hubbard, was the owner at the time of this assignment of the policies in question. It is true he had an interest in the policies contingent on his living fifteen and twenty years, and this, taking all the allegations of the bill together, must be regarded as the real charge in the bill, *i. e.*, a special ownership, and the decree can find no more than charged in the bill. Especially is this so when it is nowhere charged that the insurance policies, set out in full in the bill with all their conditions, were assigned to the bank by consent of the wife and son. Where there is any ambiguity, the allegations of the bill must be taken more strongly against the pleader. The appellee insists that the bill charges and the decree finds that the premiums were paid by Hubbard out of money he embezzled from the bank, and hence, in equity, the bank is entitled to the benefit of the policies. It will be observed, however, in answer to this suggestion, that the bill does not proceed on this theory, or claim that they are entitled to the assignment of the policies on that ground, but upon an express contract with Hubbard to assign the policies in consideration of a large indebtedness due from Hubbard to the bank. Again, the bill does not charge that *all* the premiums were paid for out of moneys of the bank, but it says a *large portion* was so paid, or that Hubbard paid them out of his own funds, and the decree can not be broader than the charge. It is evident that this point was not relied on in the court below. And even if so, we can not concede that such fact, if a fact, would have the effect of giving appellee the right to the entire policies. The bank, however, if its money paid the premiums, would be entitled equitably to be reimbursed to such an amount and interest out of the proceeds of the policy. And if upon a retrial the evidence should show that such was the fact, it should be allowed such premiums and interest thereon

out of the insurance money, together with the premiums, if any, since paid by it, with interest, as that would inure to appellee's benefit, since Hubbard has died within fifteen years.

We are of the opinion that the decree is erroneous, in that it orders the entire interest of Mrs. Hubbard and her son to be transferred to the bank by the assignment. The decree should only have ordered the interest of Hubbard, according to the terms of the policies, to be so transferred, which was contingent on the duration of his life for fifteen and twenty years. Now that he died within a period of fifteen years, his interest expires. For this error in the decree the decree is reversed and the cause remanded, with leave to amend pleadings and to take new evidence, if thought advisable. If the evidence shows that the money of the bank paid the first premiums on said policies claimed by appellant, then the court should allow such amount, with interest, to the bank, with like amounts since paid for premiums, if any, with interest, and the balance of the insurance money, if paid in to appellant for the use specified in the policy.

If the insurance money has not been paid, the decree should declare a lien on the policies for the amounts, if any, above indicated, and the assignment, or agreement to assign, to convey such interest only.

*Decree reversed and cause remanded with directions.*