### In re SIMMONS & GRIFFIN.

#### Petition of SIMMONS.

#### (Circuit Court of Appeals, First Circuit. February 11, 1919.)

#### No. 1381.

1. INSURANCE ⬤═239—LIFE INSURANCE—RIGHT TO SURRENDER POLICY.
    A policy of life insurance for the benefit of a third person named therein cannot be surrendered without the consent of the beneficiary.

2. BANKRUPTCY ⬤═143(12)—LIFE INSURANCE AS ASSET—RIGHTS OF TRUSTEE.
    The right of a trustee in a life insurance policy on the life of the bankrupt is limited to the amount which the bankrupt could have realized on the policy at the time of bankruptcy as a cash asset.

3. BANKRUPTCY ⬤═143(12)—LIFE INSURANCE AS ASSET—BANKRUPT'S RIGHT TO SURRENDER POLICY.
    Where a third person was named as beneficiary in a policy of insurance on the life of a bankrupt, and he was without power to change the beneficiary or to surrender the policy, he had no property interest therein which passed to his trustee.

In Bankruptcy. In the matter of Simmons & Griffin, bankrupts. Petition of Arthur E. Simmons to revise order of District Court. Reversed.

For opinion below, see 253 Fed. 466.

Milton B. Warner, of Pittsfield, Mass. (Warner & Barker, of Pittsfield, Mass., on the brief), for petitioner.

Walter J. Donovan, of Adams, Mass., for respondent.

Before BINGHAM and ANDERSON, Circuit Judges, and ALDRICH, District Judge.

ANDERSON, Circuit Judge. In 1903, the Metropolitan Life Insurance Company issued a $1,000 20-year endowment policy on the life of Arthur E. Simmons, payable in case of his death during the 20-year period to his mother, Martha A. Simmons.

In 1912, the mother released all her right in the policy, and the insured thereupon designated his wife as contingent beneficiary in

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

place of his mother. This designation was duly recorded in the office of the issuing company.

We agree with the District Court and with the referee that, as the result of this transaction, the wife became entitled to the same rights that she would have had if originally named as the contingent beneficiary in lieu of the mother; that is, that in case of Simmons' death within the 20-year period, the premium not being in default, the wife would have been entitled to recover the full face of the policy.

On February 19, 1917, the insured was duly adjudicated a bankrupt. At that time "this policy had a cash surrender value of $415.-26, according to the computation of the company." This means nothing more than that the company, on receiving proper acquittances and releases from all necessary parties, would pay that amount of $415.-26 in order to end its future possible liability for a larger sum.

On petition of the trustee, the referee ordered the bankrupt either to pay this sum to the trustee or to "execute an assignment of such documents and papers as may be necessary to enable the trustee to collect the amount of the cash surrender value from the company." The District Court affirmed this order. Just what documents the District Court and the referee contemplated as sufficient "to enable the trustee to collect the amount of the cash surrender value" does not appear. 253 Fed. 466.

[1] We think this decision cannot be sustained. It overlooks the rights of the bankrupt's wife and their effect upon the surrender value of the policy. "A policy of life insurance for the benefit of a third person named therein cannot be surrendered without the consent of the beneficiary." By Knowlton, J., in Haskell v. Equitable Life Insurance Co., 181 Mass. 341, 343, 63 N. E. 899, 900. The same principle is stated by Chief Justice Fuller in Hume v. Bank of Washington, 128 U. S. 195, 206, 9 Sup. Ct. 41, 44 (32 L. Ed. 370), as follows:

"It is, indeed, a general rule that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance by any act of his, by deed or by will, to transfer to any other person the interest of the person named. Bliss on Life Insurance (2d Ed.) p. 517; Glanz v. Gloeckler, 10 Ill. App. 484, per McAllister, J.; s. c. 104 Ill. 573 [44 Am. Rep. 94]; Wilburn v. Wilburn, 83 Ind. 55; Ricker v. Charter Oak Ins. Co., 27 Minn. 193 [6 N. W. 771, 38 Am. Rep. 289]; Charter Oak Ins. Co. v. Brant, 47 Mo. 419 [4 Am. Rep. 328]; Gould v. Emerson, 99 Mass. 154 [96 Am. Dec. 720]; Knickerbocker Life Ins. Co. v. Weitz, 99 Mass. 157."

[2] Whatever may have been the view in some of the earlier decisions, it is now settled law that the right of the trustee in bankruptcy is limited to the amount which the bankrupt might have received on the policy at the time of the bankruptcy as a cash asset. Burlingham v. Crouse, 228 U. S. 459, 473, 33 Sup. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148; Cohen v. Samuels, 245 U. S. 50, 38 Sup. Ct. 36, 62 L. Ed. 143. See, also, In re Hammel, 221 Fed. 56, 137 C. C. A. 80; In re Samuels, 237 Fed. 796, 151 C. C. A. 38. There would be no profit in discussing the cases before Burlingham v. Crouse, supra. See the learned and interesting review of them by Professor D. Fred-

erick Burnett in 3 Cornell L. Q. 253, May, 1918, "Life Insurance as an Asset in Bankruptcy."

[3] We think that the surrender value of this policy was not "property which, prior to the filing of the petition, he could by any means have transferred or which might have been levied upon * * * under judicial process against him," and, therefore, passing to the trustee, under Bankruptcy Act July 1, 1898, c. 541, § 70a (5), 30 Stat. 565 (Comp. St. § 9654); nor did the surrender value fall within "the powers which he might have exercised for his own benefit," thus passing to the trustee under section 70a (3).

The case is plainly distinguishable from Blinn v. Dame, 207 Mass. 159, 93 N. E. 601, 20 Ann. Cas. 1184, for in that case the insured had reserved "power to surrender the policy at any time and receive for his own benefit the amount of the then existing surrender value." See 207 Mass. 164, 93 N. E. 602, 20 Ann. Cas. 1184. The decision of the Supreme Court in Cohen v. Samuels, supra, reversing the majority decision below, rests upon the same ground, for the policies involved in that case had each "a cash surrender value at the time Samuels was adjudicated a bankrupt, which the companies were willing to pay him, and in all of them he had the absolute right to change the beneficiaries."

In the case at bar Simmons had no such right. His mother was originally the contingent beneficiary, and had rights in the policy beyond his control. She gave up those rights in due form. The company thereupon, upon the request of the insured, substituted his wife as contingent beneficiary, vesting in her rights equivalent to those originally accruing to his mother. Under these conditions the bankrupt had no pecuniary interest, which could pass to the trustee, without the consent of the wife. See Wilde v. Wilde, 209 Mass. 205, 95 N. E. 295. We must hold that this policy had no such surrender value as passed to the trustee, under section 70a (3) or 70a (5).

As what we have said is enough to dispose of the case adversely to the claim of the trustee, it is not necessary to consider whether the same result might not be reached under the exemption provided by Rev. Laws Mass. c. 118, § 73, and section 6 of the Bankruptcy Act (Comp. St. § 9590). Perhaps, to avoid misconception, we ought to add that we do not think that statute can be construed as applicable only to paid-up endowment life insurance policies, as is apparently intimated in the opinion of the court below. The history and policy of the statute are fully discussed by the Supreme Judicial Court of Massachusetts in Bailey v. Woods, 202 Mass. 549, 89 N. E. 147, 25 L. R. A. (N. S.) 722, and Bailey v. Woods, 202 Mass. 562, 89 N. E. 149. In the first case (202 Mass. 549, 551, 89 N. E. 147, 148 [25 L. R. A. (N. S.) 722]), that court said:

"Since 1844, with the exception of the seven years from 1887 to 1894, if they can be called an exception, it has been the policy of the commonwealth to enable the husband and father to provide by insurance on his life for his wife and children, subject only to have premiums paid in fraud of creditors within the statutory period of limitation inure to their benefit out of the proceeds of the insurance, and since 1894 the law has included assignments from the husband to the wife of policies issued to the husband. This has

been regarded as a wise and humane policy and the constitutionality of the legislation has never been questioned, and we do not see how it can be successfully. 'It proceeds,' as has been said, 'upon the theory that the interest of a man's wife and children in his life, and his duty to make reasonable provision for their support, are not wholly subordinate to the claims of his creditors, and that he may make an irrevocable settlement of a policy of insurance on his life for the benefit of his family.' "

We have no disposition to undertake to narrow the broad and liberal interpretation put upon that legislation by the Massachusetts court.

Let there be a decree reversing the decree of the District Court, with costs to the petitioner in this court.